Thomas L. Duston (Pro Hac Vice)
tduston@marshallip.com
Julianne M. Hartzell (Pro Hac Vice)
jhartzell@marshallip.com
Tron Y. Fu (Pro Hac Vice)
tfu@marshallip.com
MARSHALL, GERSTEIN & BORUN LLP
233 S. Wacker Drive, 6300 Willis Tower
Chicago, IL 60606
Telephone:  (312) 474.6300
Facsimile:  (312) 474.0448

Megan O'Neill (Bar No. 220147)
WILLENKEN WILSON LOH & DELGADO LLP
2 Embarcadero Center, 8th Floor
San Francisco, CA 94111
Telephone:  (415) 830-5740
Facsimile:  (213) 955-9250

Attorneys for Plaintiffs The Procter & Gamble
Company and Canfield Scientific Incorporated

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THE PROCTER & GAMBLE COMPANY and CANFIELD SCIENTIFIC INCORPORATED,<br><br>        Plaintiffs,<br><br>v.<br><br>QUANTIFICARE INC.<br><br>        Defendants. | Case No.: 5:17-CV-03061-LHK<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO BIFURCATE OR STAY OF PROCEEDINGS NOT RELATED TO NOTICE OF INFRINGEMENT**<br><br>Date:      October 11, 2018<br>Time:      1:30 p.m.<br>Place:     Courtroom 8, 4th Floor<br>Judge:     Honorable Lucy H. Koh |

# REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

# TABLE OF CONTENTS

**Page**

I.   STATEMENT OF ISSUES TO BE DECIDED ................................................1

II.  BACKGROUND ................................................................................1

III. SUMMARY OF ARGUMENT ...........................................................2

IV.  ARGUMENT ...................................................................................5

     A.   Recoverability of Damages Does Not Require "Actual Notice" and There is Thus No Basis for the Requested Bifurcation and Stay. .....................5

     B.   Quantificare's Assertions of Undue Burden and Disproportion Have Previously Been Rejected By Magistrate Cousins—A Ruling To Which Quantificare Has Filed No Objections ...................................................7

     C.   Quantificare's Eleventh Hour Efforts to Derail the Schedule in This Case Would Prejudice Plaintiff Canfield ......................................................8

     D.   Quantificare's Assertions That the Damages in This Matter Do Not Exceed $700 Are Refuted By Its Own Conduct ...................................8

     E.   In Accordance With this Court's Direction, Plaintiffs Detail Their Present Estimates of Damages and Emphasize That They Also Intend to Seek Preliminary Injunctive as Soon As the Final Impediments to Such Relief are Eliminated. ...........................................................................10

V.   CONCLUSION ................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amgen, Inc. v. Sandoz, Inc.*,
   No. 16-cv-02581-RS (MEJ), (N.D. Cal. Aug. 24, 2017) ................................................ 9

*Bombardier Recreational Products, Inc. v. Arctic Cat, Inc.*,
   No. 12-2706 (D. Minn. Feb. 24, 2017) ......................................................................... 11

*CRS, LLC v. Valve Corp.*,
   No. C08-0361RAJ, 2008 WL 11343649 (W.D. Wash. Aug. 1, 2008) .............................. 7

*Grimes v. City and Cnty. of San Francisco*,
   951 F.2d 236 (9th Cir. 1991) ......................................................................................... 8

*King Instruments Corp. v. Perego*,
   65 F. 3d 941 (Fed. Cir. 1995) ................................................................................... 10, 11

*nCAP Licensing, LLC v. Apple, Inc.*,
   No. 2-17-cv-905-RJS-BCW (D. Utah Nov. 13, 2017) .................................................... 7

*Perry v. Schwarzenegger*,
   268 F.R.D. 344 (N.D. Cal. 2010) ................................................................................... 8

*Weinar v. Rollfaaorm, Inc.*,
   744 F.2d 797, 807 (Fed. Cir. 1984) ............................................................................... 10

**Statutes**

28 U.S.C. § 636(b)(1)(A) ..................................................................................................... 8

35 U.S.C. § 271(b)(2) .......................................................................................................... 2

35 U.S.C. § 271(g) ....................................................................................................... 2, 5, 6

35 U.S.C. § 287(a) ............................................................................................................... 5

35 U.S.C. § 287(b)(2) .................................................................................................... 5, 6

**Rules**

Fed. R. Civ. P. 72(a) ............................................................................................................ 8

I.       STATEMENT OF ISSUES TO BE DECIDED

Whether necessary discovery should be delayed and all other proceedings stayed in order to determine the date Quantificare received correspondence accusing it of infringement, where such a determination is irrelevant to the damages recoverable in this case and the delay sought will prejudice Plaintiffs' ability to meet upcoming expert and dispositive motion deadlines, will delay claim construction determinations needed to resolve the parties' dispute, and will permit Quantificare to grab further market share through sales of its infringing product and to secure additional revenue from multi-year customer agreements.

II.      BACKGROUND

Plaintiffs Canfield Scientific, Incorporated ("Canfield"), and its licensor, The Procter and Gamble Company ("P&G"), brought suit against Defendant Quantificare alleging infringement of U.S. Patent No. 6,571,003.  The '003 Patent is entitled "Skin Imaging and Analysis System" and is directed to an apparatus and method for acquiring and analyzing digital images of human skin for the detection and assessment of skin defects, as more fully described in the claims thereof.  Canfield, a privately-held U.S. company headquartered in New Jersey and exclusive licensee of the '003 Patent, has manufactured and sold a product (VISIA$^{TM}$) practicing the patented invention since at least 2003. The VISIA system has been continuously marked with the '003 Patent number.  *See* Halas Declaration at ¶6-7.

Defendant Quantificare, Incorporated, the wholly owned subsidiary of a French company of the same name, introduced its competing accused LifeViz imaging systems in 2014. Quantificare appears to have employed Canfield's product in developing the infringing product. *See* Duston Declaration 2 and Exh. A thereto.  Since its introduction, Quantificare's sales of the infringing product have grown steadily at the expense of Canfield's product.

Plaintiffs brought suit against Quantificare on May 26, 2017, after it rebuffed requests that it cease sales of the infringing LifeViz systems.  Plaintiffs seek preliminary and permanent injunctive relief precluding further sales of the infringing product and damages adequate to compensate for the infringement, including but not limited to lost profits.  Plaintiffs also seek

1   enhanced damages and an award of attorneys' fees and costs based upon Quantificare's willful

2   infringement.

3       This Court previously denied, in part, Quantificare's motion to dismiss Plaintiffs'

4   Complaint based upon Section 101. The Patent Trial and Appeal Board has separately rejected

5   Quantificare's petition seeking *inter partes* review, finding that Quantificare had not shown a

6   reasonable likelihood of prevailing on its arguments that claims of the '003 Patent were invalid.

7   Quantificare's final remaining defenses of non-infringement are to be addressed in the upcoming

8   claim construction hearing on Thursday, April 19, 2018.

9   **III.    SUMMARY OF ARGUMENT**

10      Quantificare displays a troubling lack of candor in its recent Motion, misrepresenting

11  both the law and the facts. Quantificare argues that it cannot be liable for infringement prior to

12  actual notice of infringement, citing 35 U.S.C. Section 271(b)(2). That Section, however, applies

13  only to infringement under Section 271(g). Quantificare is not accused of infringement under

14  Section 271(g).

15      Quantificare falsely declares that Plaintiffs have provided no evidence that would entitle

16  them to recover damages prior to March 3, 2017. But Quantificare fails to apprise this Court that

17  on September 20, 2017, Plaintiffs made the disclosures, as required under Local Patent Rules, of

18  documents sufficient to evidence the marking of the patented products. That marking has been

19  consistent and continuous since the first of Quantificare's infringing sales. *See* Halas

20  Declaration ¶5. Under Section 287(a), a party gives adequate notice by fixing to the patented

21  article, or to its packaging, a notice including the patent number. Such marking constitutes

22  constructive notice and entitles a party to recover damages. Actual notice, such as

23  correspondence alleging infringement, is a requirement only where marking is absent. Damages

24  are recoverable here for infringing activity occurring before March, 2017.

25      Quantificare's counsel hardly needs a primer regarding patent damages and marking.

26  Counsel claims more than 20 years' experience in patent law. He reportedly previously served

27  as the Chair of both the Executive Committee of the Intellectual Property Section of the

28

California Bar and of the Patent Litigation Committee of the American Intellectual Property Law Association. Quantificare's misleading arguments concerning the law and facts cannot be explained by its counsel's inexperience.

Quantificare is accused of directly infringing claims variously directed to an imaging apparatus, to methods of using such an apparatus, and to tangible media containing software instructions adapted to perform those methods on the claimed apparatus. Quantificare and Plaintiff Canfield compete in the market for such imaging devices. As Quantificare acknowledges, Plaintiffs seek recovery of damages adequate to compensate for Quantificare's infringing activity, including lost profits.

While Quantificare asserts that the alleged infringement implicates little or nothing of value, its claims are belied by its own actions. Quantificare has mounted an aggressive and costly (to both parties) defense involving two motions to dismiss, an unsuccessful petition seeking *inter partes* review, and more recently a further petition for rehearing challenging the PTAB's rejection of its petition.

Before the filing of this action, and repeatedly since, Quantificare has rebuffed demands that it disable the accused functionality—notwithstanding its present protests that the functionality is insignificant. In fact, Quantificare reports that it has invested to date an estimated ███████ in the accused products, and that it anticipates investing a further ███ ██████ this year and next—a total investment of ████████. These actions are hardly consistent with the minimal value Quantificare assigns.

Quantificare improperly arrives at its purported damages calculation only after excluding the bulk of its infringing sales, as discussed above, and unilaterally declaring that damages may be recovered solely on revenues realized from a single component of the accused apparatus. Quantificare's accused systems, such as its LifeViz Infinity System, are in fact sold for an average of nearly ██████ per unit. *See* Duston Declaration at ¶5. Pursuant to the Court's direction, we have outlined below that recoverable damages may exceed $1 Million.

In contrast to Quantificare's scorched-earth approach, Plaintiffs have filed their

Complaint, served a modest set of discovery requests directed solely to information fundamental to their claims, and complied with this Court' various disclosure obligations.  While Quantificare complains of the purported burden occasioned by Canfield's discovery, it has in fact produced only 93 pages of documents and a handful of software files.

Quantificare's strategy is obvious.  It has sought to delay this litigation in an attempt to run out the clock on the asserted patents.  ████████████████████████████████████████████████████████████████████████  See Duston Declaration ¶6 and Exh. C thereto at 10.  ████████████████████████████████████ ████████████████████████  Id.

The harm here extends beyond profits lost by Plaintiff Canfield on the sale of its patented imaging devices.  Sales of such imaging devices also include sales of extended annual maintenance and warranty contracts, software upgrades, as well as ancillary hardware.  These additional revenues extend for many years beyond the initial sale of the patented device and, in the event of an infringing sale by Quantificare, are also lost to Plaintiff Canfield.  Clearly, Quantificare's intent is to secure market share and as many of these long term revenue streams for its itself as it can before a finding of infringement and the entry of preliminary and permanent injunctive relief against it.

The Claim Construction hearing is set in just a matter of days (April 19, 2018).  In light of Quantificare's positions that it does not infringe, resolving the few claim construction issues to which Quantificare clings will significantly advance this case with little additional burden.  The disputes are fully briefed and are essentially limited to two issues, whether claimed comparison is restricted to a percentile determination and the manner in which landmarks may be identified.

Because Quantificare's arguments ignore the plain meaning of the claim language and the patent's specification, Plaintiffs anticipate a favorable claim construction order from this Court and expect to file promptly a motion for summary judgment of infringement thereafter.  In addition, in light of the PTAB's rejection of all of Quantificare's asserted prior art invalidity

defenses, Plaintiffs further intend to seek immediate injunctive relief in conjunction with this Court's determination that Quantificare's products infringe.

The further delays sought by Quantificare in its belated motion to Bifurcate and Stay are unwarranted and would impede, rather than advance, the resolution of this case.

## IV.   ARGUMENT

### A.   Recoverability of Damages Does Not Require "Actual Notice" and There is Thus No Basis for the Requested Bifurcation and Stay.

Quantificare requests that all discovery, other than that directed to determining the date of actual notice of infringement, be stayed.  Quantificare also demands, on the eve of the claim construction hearing, that this Court indefinitely postpone resolution of the parties' disputes concerning the two claim construction issues critical to resolving the question of Quantificare's infringement.  Quantificare expresses its view that a determination of the date of actual notice of infringement will limit the damages recoverable, and that such a determination will, in some unspecified manner, "get[] this case settled or resolved judicially."

While it is highly debatable that cancelling the upcoming claim construction will advance settlement or increase the ability of this Court to "judicially resolve" the infringement allegations, that debate is unnecessary.  The simple fact of the matter is that the date of actual notice of infringement is irrelevant to the recoverability of past damages.  Canfield has previously served Quantificare with evidence that it marked the patented products, which is all that Section 287(a) requires to entitle Plaintiffs to recover past damages.  *See* Duston Declaration at ¶3-4.  It is pointless to suspend all proceedings in order to determine the date Quantificare first received correspondence accusing it of infringement.

Quantificare misrepresents the law.  Quantificare cites 35 U.S.C. Section 287(b)(2) in support of its proposition that damages are not recoverable for activity occurring prior to an accused infringer's receipt of correspondence accusing it of infringement. *Motion* at 4.   By its own terms, however, Section 287(b)(2) does not apply here.  Section 287(b)(2) applies only to actions alleging infringement under Section 271(g).  Quantificare is not accused of infringement

1   under Section 271(g).

2       Section 287(b)(2) provides in relevant part:

3       **No remedies for infringement under section 271(g)** shall be available with
4       respect to any product in the possession of, or in transit to, the person subject to
        liability under such section before that person had notice of infringement with
5       respect to that product.

6   *See* 35 U.S.C. §287(b)(2).

7       Section 271(g) concerns the importation into the United States of unpatented articles that

8   are made abroad by means of a process covered by a U.S. Patent.  Quantificare is not accused of

9   such infringement and Section 287(b)(2) has no application.

10      Quantificare chooses to ignore Section 287(a).  Section 287(a) provides the only

11  limitation on damages in this matter.  Under that section, actual notice of infringement is

12  required only where patented products made or sold in the United States were not marked.

13  Marking constitutes "constructive notice" and entitles a plaintiff to past damages from the date

14  such marking began.

15      Quantificare is aware that the patented products were marked.  On September 20, 2017,

16  Plaintiffs served Quantificare with evidence of marking.  *See* Duston Declaration at ¶3-4.

17  Products incorporating the patented technology have been substantially and continuously so

18  marked for the entire period of Quantificare's infringement.  *See* Halas Declaration at ¶4-7.  But

19  Quantificare makes no mention of these facts in its motion, leaving this Court with the false

20  impression that Plaintiffs must otherwise establish actual notice in order to recover past damages.

21      As Quantificare's entire request to bifurcate and stay discovery is premised upon this

22  specious argument that the date of actual notice limits damages in this case, no basis thus exists

23  for the requested relief.  Quantificare's motion should be denied.  And, given that Quantificare's

24  arguments find no support in applicable law—indeed, because they are contrary to applicable

25  law—an award to Plaintiffs of the fees and costs incurred in responding to Quantificare's motion

26  would not be unwarranted.

27

28  PLAINTIFFS' RESPONSE TO DEFEN-            6            CASE NO. 5:17-CV-03061-LHK
    DANT'S MOTION TO BIFURCATE OR
    STAY

1

2

### B.     Quantificare's Assertions of Undue Burden and Disproportion Have Previously Been Rejected By Magistrate Cousins—A Ruling To Which Quantificare Has Filed No Objections

3

4       While acknowledging that a court may, in appropriate circumstances, order a delay in

5  discovery as to certain issues, courts have cautioned that a defendant's hope that a dispositive

6  motion or some other tactic will result in an adjudication of no liability is not, in itself, enough to

7  warrant "phased" discovery.  *See CRS, LLC v. Valve Corp.*, No. C08-0361RAJ, 2008 WL

8  11343649, *1 (W.D. Wash. Aug. 1, 2008).  Were it so, "then discovery would always occur in

9  stages." *Id.*  Courts have observed that phased discovery, particularly discovery that postpones

10  receipt of financial information, is "presumptively contrary to the court's policy of encouraging

11  settlement." *Id.*

12       Moreover, courts have noted that in the absence of evidence that discovery "will impose

13  burdens that justify a departure from the ordinary rule," it is appropriate to deny requests to

14  phase discovery.  *Id.*; *see also nCAP Licensing, LLC v. Apple, Inc.*, No. 2-17-cv-905-RJS-BCW,

15  at 2 (D. Utah Nov. 13, 2017) (Apple failed to identify a clear case of hardship or inequity if

16  required to proceed, as required to meet the "high threshold required for a stay.") (Copy attached

17  hereto as Exhibit A).

18       Just last week Magistrate Cousins rejected Quantificare's arguments that moving forward

19  with discovery would impose a disproportionate burden on it in light of the significance of the

20  issues and amounts in dispute.  On Friday, April 6, 2018, Magistrate Cousins heard extended

21  argument from Quantificare regarding its position. Magistrate Cousins, however, rejected these

22  arguments.  Magistrate Cousins concluded that the discovery sought was "relevant ***and***

23  ***proportional to the needs of the case*.***" *See* D.I. 70 (emphasis added).  Quantificare has not filed

24  objections to the Magistrate's findings.

25       Quantificare's Motion to Bifurcate or Stay is essentially a collateral attack on the

26  Magistrate's findings.  A Magistrate's determination on an issue referred to him for decision is

27  ordinarily reconsidered only if shown to be "clearly erroneous or contrary to law." 28 U.S.C. §

28  PLAINTIFFS' RESPONSE TO DEFEN-                    7              CASE NO. 5:17-CV-03061-LHK
    DANT'S MOTION TO BIFURCATE OR
    STAY

636(b)(1)(A); *see also* Fed. R. Civ. P. 72(a). "[T]he magistrate's factual determinations are reviewed for clear error, and the magistrate's legal conclusions are reviewed to determine whether they are contrary to law." *Perry v. Schwarzenegger*, 268 F.R.D. 344, 348 (N.D. Cal. 2010). This standard is deferential. *Grimes v. City and Cnty. of San Francisco*, 951 F.2d 236, 241 (9th Cir. 1991). Quantificare has made no effort to meet that burden, but merely seeks an end run around to the Magistrate's decision.

### C.   Quantificare's Eleventh Hour Efforts to Derail the Schedule in This Case Would Prejudice Plaintiff Canfield

The Court must also consider the potential prejudice to Plaintiffs.  Fact discovery is scheduled to close on August 15, 2018.  Opening expert reports are due September 5, 2018. Dispositive motions are due November 9, 2018.  Quantificare seeks an indefinite postponement of discovery until after a "determination of the issue of date of notice of infringement" to occur as some unspecified date.  Quantificare has yet to file any motion or offered any vehicle by which such a determination  may be made. Nor has Quantificare explained how, even it obtained such a determination, discovery relating to infringement, copying, willfulness, and  damages would still not have to proceed.  *See Amgen, Inc. v. Sandoz, Inc.*, No. 16-cv-02581-RS (MEJ), at 2-3 (N.D. Cal. Aug. 24, 2017)(denying motion to stay discovery pending decision on motion to bifurcate and other issues, noting that Amgen needed requested discovery to support its request for injunctive relief and because deadlines for expert reports were rapidly approaching, Amgen might be unfairly prejudiced if discovery were delayed.) (Copy attached as Exhibit B).

Quantificare's demand to suspend proceedings in the case for 60 to 90 days will make it impossible for Plaintiffs to prepare to meet these deadlines.  Quantificare's real goal appears to be to postpone its ultimate reckoning so that it may grab more market share from Canfield and to deny Plaintiffs discovery that would fully reveal the extent of Quantificare's liability.

### D.   Quantificare's Assertions That the Damages in This Matter Do Not Exceed $700 Are Refuted By Its Own Conduct

Quantificare assertion cannot be squared with its scorched-earth tactics.  Quantificare has

mounted an aggressive and costly (to both parties) defense involving two motions to dismiss, an unsuccessful petition seeking *inter partes* review, and more recently a further petition for rehearing challenging the PTAB's rejection of its petition.

Despite claiming the accused functionality is insignificant, Quantificare reports that it has invested to date an estimated ▮▮▮▮▮▮ in the accused products, and that it anticipates investing a further ▮▮▮▮▮ this year and next. *See* Duston Declaration at ¶6 and Exh. C thereto at 11.   These actions belie Quantificare's claims.

Quantificare improperly arrives at its purported $700 damages calculation only after excluding infringing sales occurring before March 2017, as discussed above, and unilaterally declaring that damages may be recovered solely on revenues realized from a single component of the accused apparatus.  Quantificare does so based upon a heavily redacted chart that conceals information concerning the bulk of its sales.  *See* Payne Declaration, Exhibit B, D.I. 71-2.  That chart further reveals that Quantificare has chosen to provide only those invoices where its software module is listed.  *Id.* (noting that only sales listed are those where sales appear with software).  In instances in which Quantificare may have chosen to invoice the software module and the associated hardware appeared on separate invoices, it apparently has not provided that information.

Quantificare has produced only 93 pages of heavily redacted documentation.  It is clear from even this anemic production, however, that Quantificare has failed to reveal the entirety of its revenue streams relating to the accused products.  For example, Quantificare has not provided information that might permit a calculation of licensing renewals, software upgrades and maintenance and support services provided after the initial sale of the accused products.  Quantificare has also refused to provide information from which its gross profit margins on each infringing product may be accurately determined.  Quantificare's damages calculations cannot be credited.

E.    **In Accordance With this Court's Direction, Plaintiffs Detail Their Present Estimates of Damages and Emphasize That They Also Intend to Seek Preliminary Injunctive as Soon As the Final Impediments to Such Relief are Eliminated.**

As Quantificare has acknowledged, Canfield and Quantificare are direct competitors in the discrete market for products of this type.  Aside from Canfield's patented products, Quantificare has identified only its own Lifeviz products as commercially available products providing the accused functionality.  *See* Duston Declaration at ¶6-7 and Exhs. C and D thereto, Interrogatory No. 5.

Plaintiff Canfield is entitled to recover lost profits.  *See Weinar v. Rollfaaorm, Inc.*, 744 F.2d 797, 807 (Fed. Cir. 1984) (exclusive licensee my recover its lost profits); *see also King Instruments Corp. v. Perego*, 65 F. 3d 941, 947-952 (Fed. Cir. 1995)(discussing the history of Patent Act and its authorization of lost profit damages).

Lost profits on all sales a plaintiff may have made "but for" the infringement are recoverable.  *See King*, 65 F.3d at 949 ("damages" under Section 284 encompasses all amounts necessary to redress any direct injury from the infringement, including sales of products not covered by the patent).  Courts have acknowledged the appropriateness of lost profits awards that extend to profits expected on the sales of spare parts and support and maintenance.  *See, e.g.*, *Bombardier Recreational Products, Inc. v. Arctic Cat, Inc.,* No. 12-2706 (D. Minn. Feb. 24, 2017) (Copy attached hereto as Exhibit C).

As noted above, Quantificare's disclosures are dubious, and the numbers of infringing sales undoubtedly underreported.  However, even if Quantificare's estimates of the number of infringing units whose sales occur during the term of the patent are credited, Canfield has estimated that the total profits its will have lost on such sales will exceed $1 Million.

The basis for those calculations are more fully set forth in the Declaration of James Larkey filed herewith.  In summary, Canfield's profits per unit on sales of its patented VISIA Deluxe product  between 2014 and 2017 ranged between ████████████ per unit, including profits derived from service contracts and additional revenue from an available mobile

app.  *See* Larkey Declaration at ¶3-7 and Exh. A thereto.  Quantificare has disclosed that it has or will have sold close to ▮ infringing units.  The chart below provides an estimate of the lost profits expected to be sought at trial:

| YEAR | # Units | Lost Profit per Unit | Est. Total Lost Profits |
|---|---|---|---|
| ▮ | | ▮ | |
| ▮ | ▮ | ▮ | ▮ |
| ▮ | ▮ | ▮ | ▮ |
| ▮ | | ▮ | ▮ |
| ▮ | | ▮ | ▮ |
| ▮ ▮ | | ▮ | ▮ |
| | ▮ | ▮ | ▮ |

From the outset, however, this case has not merely been about damages.  Prior to filing this action, Plaintiffs sought Quantificare's agreement to cease sales of the infringing products.  Quantificare refused.  Plaintiffs filed the instant action seeking not only damages, but preliminary and permanent injunctive relief.

Quantificare has aggressively attacked the validity of the patent.  Plaintiffs have recently, with the PTAB's denial of Quantificare's IPR Petition, now beaten back those obstacles to injunctive relief.  Quantificare makes its last stand on its purported non-infringement defense.  This last remaining obstacle will be addressed in this Court's upcoming claim construction hearing.  Plaintiffs believe that an adverse ruling for Quantificare's on its proposed claim constructions will establish infringement and, given the earlier rulings on Quantificare's other defenses, will establish a likelihood of success on the merits sufficient to enjoin Quantificare's continued, willful infringement.

## V.    CONCLUSION

Quantificare seeks prejudicial delays of this litigation on the eve of the hearing that will sweep away the last of its remaining defenses.  Quantificare urges this Court to delay these proceedings by misrepresenting the law and by concealing facts of which it is fully aware relating to Plaintiffs' marking. Quantificare complains of disproportionate burdens despite

having produced only 93 pages of documentation to date, and fails to apprise this Court of the earlier, unchallenged determination of Magistrate Cousins that no such unreasonable burden exists.  Quantificare provides selective and incomplete information concerning its infringing activities and the revenues therefrom.  Characterizing the value of these revenues as insignificant, Quantificare has nevertheless mounting an aggressive, costly campaign in this Court and in the Patent Office seeking to protect those revenues.  Quantificare seeks to run out the clock on the asserted patent, grabbing as much long-term market share and locking in as many multi-year maintenance and support agreements as it can before it is brought to heel.  Plaintiff Canfield has a legitimate claim for substantial damages, and it should be allowed the fundamental discovery it has sought.

Dated:  April 13, 2018                               Respectfully submitted,


                                                     /s/  *Thomas L. Duston*
                                                     Thomas L. Duston
                                                     Julianne M. Hartzell
                                                     Tron Y. Fu
                                                     Marshall, Gerstein & Borun LLP
                                                     233 South Wacker Drive
                                                     6300 Willis Tower
                                                     Chicago, IL 60606-6357

                                                     (312) 474-6300

1

### CERTIFICATE OF SERVICE

2      I hereby certify that I electronically filed the foregoing **PLAINTIFFS' RESPONSE TO**

3 **DEFENDANT'S MOTION TO BIFURCATE OR STAY** with the Clerk of the Court using

4 the CM/ECF system, which will send notification of such filing to the Electronic Service List for

5 this Case.

6

7 Dated:  April 13, 2018                    By:  */s/  Thomas L. Duston*  _____
                                                                        Attorney for Plaintiffs
8                                                                       THE PROCTER & GAMBLE COMPANY and
                                                                        CANFIELD SCIENTIFIC INCORPORATED
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28